Landon, P. J.
We are satisfied from a perusal of the testimony that the decedent had testamentary capacity. We shall not further consider that question except in connection with the allegation of the contestant that the decedent executed the proposed will and codicil under undue influence and restraint.
At the time of the execution' of the alleged will, the decedent was seventy-five years of age, a farmer, a man of strong character, convictions and prejudices, and somewhat eccentric. He had two children, both sons, of mature age, whose methods of life had not been satisfactory to him. One of them, Sherwood, was living with a woman as his wife under an alleged marriage of such questionable validity that the decedent declared its validity by his codicil *364 in order to protect her and her children by Sherwood in such property as might come to them through him in the event of Sherwood’s death. Sherwood and his family were living with him at the time of the execution of the will.
The other son, Kirtland, was unmarried, was of dissi pated habits, a spendthrift and upon terms of intimacy with a woman of whom the decedent was accustomed, not unjustly to speak disparagingly.
The decedent dictated his will to the counsel who drew it. Its provisions are more favorable to Sherwood than to Kirtland. His counsel upon receiving his instructions remonstrated with him against the unequal provision, but to use his language, “he overruled me in such an authoritative manner that I did not resume my argument. ”
It is alleged by the contestant that the decedent’s mind became weakened under the influence of morphine and in consequence of his failing bodily powers, and that while in that enfeebled condition he became the victim of the arts and misrepresentations of Marietta, the alleged wife of Sherwood, which she practiced and made to prejudice his mind against Kirtland; and that he made his will and codicil under the undue influence she had over him, and the impositions she practiced upon him.
It is undoubtedly true that when he made his will, his mind was not so well-balanced as it had been when he was in full health and strength. He was more irritable and no doubt more subject to disturbance than formerly, by unimportant facts or untrue statements. But there is no doubt that his mind was clear, his purpose firm and his opinions respecting his two sons and their capacities and conduct well-considered, and so far as we can judge from the testimony, correctly formed. He knew them both and made no mistake in his judgment respecting either one of them.
The will was made ten and one-half months before the testator’s death, and the codicil twenty-two days.
In March, 1882, the decedent made a will which the will now proposed revokes. At that time it is not alleged that he did not have testamentary capacity, or that he was laboring under restraint or undue influence. By that will he devised and bequeathed to Sherwood, in trust for Kirtland, certain real and personal property, the income to be paid to Kirtland during his life, the property itself upon Kirtland’s death to go to his heirs. Sherwood was given power in his discretion, if he should “deem it wise, proper and prudent to do so, ” to convey the trust property to Kirtland absolutely.
He gave the rest of his property to Sherwood absolutely.
By the will in question the testator gave to Kirtland and Sherwood, in equal shares, in fee, forty-five acres of land, *365 also the income of 123'shares of bank and railroad stock, but not the principal; one-half of the principal, upon the decease of either was to go to his children; if either left no children, the survivor to have the whole income during his life, and his children upon his decease, the whole principal.
To Sherwood he gave the rest of his property for life only except certain specified lots which he might sell absolutely. He gave him his chattels, except one bed and bedding for it and a sofa and carpet, which he gave to Eirtland.
The first will made a better provision for both Eirtland and Sherwood than the second. The children of Sherwood seem to be the objects of the testator’s ultimate bounty in the second will.
The key to the last will is obviously this: The testator did not hope that either son would ever be of much credit to him. He had hopes that his grand children might turn out better. Eirtland, the elder, had no family; Sherwood had a family. He bestowed his property so that Eirtland would have something to support himself with, and Sherwood something more to support himself and family with, and he intended by his ulterior disposition to vest the greater part of his property in Sherwood’s children.
How, there is not any doubt that Marietta, the wife of Sherwood, did talk a great deal to the testator against Eirtland. She could say a great deal about his habits, companions and methods to his discredit, and still keep within the truth. The testator himself said that Marietta and her mother talked so much against Eirtland that they made his head wild. Ho doubt they sometimes overstated the facts, or told what was untrue. But the testimony is to the effect that the testator estimated those tales at about their proper value. Some he investigated and found to be untrue. He said that Marietta was a schemer, and was trying to influence him against Eirtland.
Upon an examination of the whole testimony, we think it quite clear that the testator made his own will in his own way; that he was not laboring under any delusions with reference to his children; that he had a clear and rational purpose respecting his property, the objects of his bounty and the dispositions he ought to make by his will.
Decree affirmed, with costs against the appellant.
Fish and Parker, JJ., concur.